## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEMARIO NEWTON,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| | ) | **1:22-cv-01694-VMC** |
| **v.** | ) | |
| | ) | |
| **WINGATE MANAGEMENT** | ) | |
| **COMPANY, LLC,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONSOLIDATE

# <u>TABLE OF CONTENTS</u>

Introduction ....................................................................................................... 2

Legal Standard ................................................................................................. 4

   I.   **Trial Consolidation is Not Appropriate Because the Differences Across the Cases Predominate Over their Commonalities, and Would Likely Cause Ethical Conflicts, Prejudice, and Confusion in a Single Trial.** .................... 6

     a.   **In a Consolidated Trial, Evidence and Argument on the Duty Element Likely Would Cause Conflicts, Prejudice, and Confusion.** ......................... 8

     b.   **In a Consolidated Trial, Evidence and Argument on the Breach of Duty Element Likely Would Cause Confusion, Prejudice, and Conflicts.** ....... 14

     c.   **In a Consolidated Trial, Evidence and Argument on the Causation Element Likely Would Cause Confusion, Prejudice, and Conflicts.** ....... 14

     d.   **In a Consolidated Trial, Evidence and Argument on the Damages Element Likely Would Cause Delay and Confusion.** ................................. 18

     e.   **In a Consolidated Trial, Evidence and Argument on Assumption of Risk and Plaintiffs' Knowledge Likely Would Cause Confusion, Prejudice, and Conflicts.** ............................................................................................... 19

     f.   **The Specific Risks of Ethical Conflicts, Prejudice, and Confusion Outweigh Considerations of Inconsistent Adjudications, Efficiency, and Economy** ................................................................................................. 20

   II.   **If the Court Opts to Consolidate the Cases for Trial Over Plaintiffs' Objections, then it Should Break the Cases in Two Groups.** ...................... 24

**CONCLUSION** ............................................................................................. 25

As Defendant's counsel recognized at oral argument on summary judgment, the five cases pending before the Court about a shooting at Bedford Pines on June 30, 2020 have substantial factual and legal differences. Because the differences across the cases predominate over their commonalities, the Court should decline Defendant's motion to consolidate the cases for a single trial. In a consolidated trial, Plaintiffs' counsel likely would face significant (and unwaivable) ethical conflicts, Plaintiffs likely would be prejudiced, and the jury likely would be confused. A consolidated trial is untenable. Further, a verdict in one case would weigh on negotiations in the others and likely lead to resolutions outside of court.

While Plaintiffs oppose a consolidated trial, they do not oppose consolidating the cases for certain pretrial proceedings (e.g., consolidated *Daubert* briefing; consolidated *in limine* briefing; consolidated pretrial conference). Further, Plaintiffs propose how the Court should proceed if the Court opts for some type of trial consolidation over Plaintiffs' objections. In that event, the Court should divide the Plaintiffs into two groups based on their alleged statuses on the property (alleged non-trespassers and alleged trespassers) and schedule two consolidated trials, one for each group. While this style of consolidation likely would still engender conflicts, prejudice, and confusion, the risks would be lower than in a joint trial with all five Plaintiffs.

## Introduction

On June 30, 2020, five men were shot while standing in a common area at Bedford Pines, an apartment complex at 639 Parkway Drive in Atlanta, Georgia. On March 30, 2022, Plaintiffs filed five separate lawsuits against Wingate Management Company, LLC, which manages Bedford Pines. Plaintiffs alleged that Defendant's negligent management of Bedford Pines on June 30, 2020 caused them to be shot.

Wingate argues that the five cases should be consolidated for trial because there are common legal and fact issues. True, Plaintiffs were shot on the same property at the same time by the same shooters, and Plaintiffs contend that Wingate's failure to secure Bedford Pines (which created what Wingate's property manager called a security "void" at Bedford Pines) caused Plaintiffs to be shot.

But on virtually every legal and factual issue material to Plaintiffs' negligence claims—duty, breach of duty, causation, damages, and Plaintiffs' knowledge of the area—the analyses are case-specific and divergent. All five victims arrived at Bedford Pines at different times on June 30, 2020 to visit different tenants. The victims came to the common area where the shooting occurred at different times, stayed for different lengths of time, and visited for different reasons. Some purchased food from a restaurant operating in a Bedford Pines parking lot adjacent to the common area where the shooting occurred. The victims each had different histories at Bedford Pines and knowledge of crime in the area. Months or years

before the shooting, two of the victims allegedly received trespass notices at Bedford Pines, while three had not. Three of the victims had criminal histories, two did not.

The victims' damages differ profoundly, too. One (Marcus Sims) died as a result of the shooting. Another (Ricky Phillips) was hospitalized for weeks and has had an ostomy bag for over 5 years. The others (Kenneth Long, Keiontay Davis, and Demario Newton) were hospitalized for varying periods and have injuries significantly differing in severity.

At oral argument on summary judgment, Wingate's counsel recognized the substantial differences across the cases. The Court asked whether Wingate's "position" is that "all of the plaintiffs are either licensees or trespassers," (Ex. 1 at 5), and Wingate's counsel responded, in relevant part, "there are different facts that apply to each of them that inform that analysis… Defendants contend that two of the cases involve trespassers," (Ex. 1 at 6). Later, the Court asked Wingate, "whether your position is that all of the plaintiffs have the same knowledge of the dangerous condition or do you think there are different considerations there?" (Ex. 1 at 5). Wingate's counsel responded in relevant part, "no, they [the Plaintiffs] do not have all the same knowledge[.]" (Ex. 1 at 6). Wingate's counsel separately emphasized, "there are individual facts that inform that analysis for each one of those plaintiffs." (Ex. 1 at 11). In another exchange, Wingate's counsel stressed: "Obviously, we have five cases. There's some issues that overlap. There's some issues that are, you know,

3

personal knowledge and certain issues that are by defendant, so one—excuse me—by plaintiff." (Ex. 1 at 5). Later, Wingate's lawyer said that "there are many different" issues in the cases, "some are common, some are not," "there are overlaps, but there are also differences in there." (Ex. 1 at 22).

Because the differences across the cases predominate over the commonalities, and a consolidated trial would likely cause ethical conflicts for Plaintiffs' counsel, prejudice to Plaintiffs, and confusion for the jury, the Court should decline Wingate's motion to consolidate all five cases for trial.[1]

## <u>Legal Standard</u>

Under Rule 42, the Court has wide discretion to determine whether to consolidate actions pending before it, and if so, how to structure the consolidation. Fed. R. Civ. P. 42. Rule 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Rule 42(b) says, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party

---

[1] Even so, Plaintiffs do not oppose consolidating the cases for certain pretrial proceedings (e.g., consolidated *Daubert* briefing; consolidated *in limine* briefing; consolidated pretrial conference). Some issues to be addressed in *Daubert* and *in limine* briefs, and at the pretrial conference, would be case specific. Those could be specified and addressed as needed.

claims. When ordering a separate trial, the court must preserve any federal right to a jury trial."

The Court's discretion to consolidate is not "unfettered." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). The Court must consider:

> Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). In short, Rule 42 requires trial courts to balance efficiency and convenience against the risk of prejudice and confusion.

"[I]n resorting to the use of Rule 42(a) the trial judge should be most cautious not to abuse [her] judicial discretion and to make sure that the rights of the parties are not prejudiced by the order of consolidation under the facts and circumstances of the particular case." *Dupont v. S. Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966);[2] *Johnson*, 899 F.2d at 1285 ("Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial."); *Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983) ("A trial must remain fair to both parties, and such

---

[2] Former Fifth Circuit cases decided before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice."). "Where prejudice to rights of the parties obviously results from the order of consolidation, the action of the trial judge has been held reversible error." *Dupont*, 366 F.2d at 196.

The party seeking consolidation bears the burden "to show common factual or legal issues warranting it." *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 374 (2d Cir. 1993), *on reh'g*, 35 F.3d 637 (2d Cir. 1994). "The burden is not on the party opposing aggregation to show divergences." *Id.*

## I. Trial Consolidation is Not Appropriate Because the Differences Across the Cases Predominate Over their Commonalities, and Would Likely Cause Ethical Conflicts, Prejudice, and Confusion in a Single Trial.

While the Court has discretion to consolidate cases that involve a common question of law or fact, it should not consolidate these cases because the differences across the cases predominate, and, in a consolidated trial, those differences likely would cause conflicts, prejudice, and confusion.

Some commonality across cases is *not* sufficient, on its own, to justify consolidation for trial. The Court must also consider, for example, "the specific risks of prejudice and possible confusion" resulting from consolidation. *Eghnayem*, 873 F.3d at 1313. It must also evaluate whether consolidation would create conflicts among the parties and/or for their counsel. *See, e.g., Dupont*, 366 F.2d at 196; *see also State Mut. Life Assur. Co. of Am. v. Peat, Marwick, Mitchell & Co.*, 49 F.R.D.

6

202, 210 (S.D.N.Y. 1969) ("[N]otwithstanding the existence of common questions of law and fact among separate actions, consolidation is improper if it aligns parties having conflicting and disparate positions.")

Where a party moves to consolidate cases with differences that predominate over their commonalities, courts routinely decline to consolidate the cases for trial. *See, e.g., Dopson-Troutt v. Novartis Pharms. Corp.*, No. 8:06-CV-1708-T-24, 2012 WL 7659710, at *1 (M.D. Fla. Oct. 16, 2012) ("The Court agrees that the benefits of consolidation do not override the substantial risk of prejudice and confusion where, as here, individualized questions of law and fact predominate."); *McCoy v. Biomet Orthopedics, LLC*, No. CV ELH-12-1436, 2019 WL 6324558, at *7 (D. Md. Nov. 25, 2019) (denying consolidation because, "despite some factual similarities, individual issues predominate in plaintiffs' cases"); *Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 461 (E.D. Mich. 1985) ("When cases involve some common issues but *individual issues* predominate, consolidation should be denied." (emphasis in original)). That makes sense, because where differences predominate, the risks of prejudice, confusion, and conflicts—all grounds to deny consolidation—go up.

Here, differences predominate, and a consolidated trial is untenable because of the risks of conflicts, prejudice, and confusion. Given Plaintiffs sued Wingate for negligently managing and securing Bedford Pines, Plaintiffs each must prove by a preponderance of evidence that Wingate owed them a duty, that Wingate breached

the duty owed, that the same breach proximately caused Plaintiffs' damages, and that Plaintiffs suffered damages. *See Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 721, 890 S.E.2d 209, 219 (2023). Likewise, Plaintiffs must prove that Wingate had superior knowledge of the hazard on June 30th. *Georgia CVS Pharmacy*, 316 Ga. at 728. On each of those factors—duty, breach, causation, damages, and Plaintiffs' knowledge—the cases diverge, and the risks of conflicts, prejudice, and confusion abound.

> a.    In a Consolidated Trial, Evidence and Argument on the **Duty Element** Likely Would Cause Conflicts, Prejudice, and Confusion.

The parties disagree as to the Plaintiffs' respective statuses on June 30, 2020, and those disagreements likely would engender ethical conflicts, prejudice, and confusion in a consolidated trial.

Each Plaintiff contends that they were an invitee at Bedford Pines on June 30, 2020. The evidence will show that Plaintiffs were invited to visit Bedford Pines by tenants, and, additionally, by a restaurant operating in a Bedford Pines common area. Wingate will dispute that evidence and assert that three of the Plaintiffs were licensees and two were trespassers. (Ex. 1 at 6). Differences aside, the parties agree that "there are different facts that apply to each" Plaintiff in the duty analysis. (Ex. 1 at 6). Plaintiffs arrived at Bedford Pines at different times to visit different tenants, and each Plaintiff ventured into the common area where the shooting occurred at different times, stayed for different periods, and came for different reasons. Some

purchased food from a restaurant in the Bedford Pines parking lot adjacent to the common area. Months or years before the shooting, two of the victims allegedly received trespass notices at Bedford Pines, while three had not. In short, the duty analysis for each Plaintiff is fact-laden, and the facts in the cases diverge. *See, e.g., Wiltse v. Wal-Mart Stores E., LP*, 720 F. Supp. 3d 1313, 1319–20 (N.D. Ga. 2024) (status inquiry is fact intensive under Georgia law).

A consolidated trial on the issue of Plaintiffs' statuses at Bedford Pines would prejudice Plaintiffs because it would create ethical conflicts for their counsel under Rules 1.3 and 1.7 of the Georgia Rules of Professional Conduct. Rule 1.3 says,

> A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer. The maximum penalty for a violation of this rule is disbarment.

Ga. Rules of Prof'l Conduct, Rule 1.3. Comment 1 to that rule clarifies that a lawyer "may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor" and "should act with commitment and dedication to the interests of the client and with ***zeal in advocacy*** upon the client's behalf." *Id.* at Comment 1 (emphasis added). Further, Rule 1.7 provides:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests ***or the lawyer's duties to***

> *another client*, a former client, or a third person *will materially and adversely affect the representation of the client*, except as permitted in (b).[3]

*Id.* at Rule 1.7. The State Bar's comments on Rule 1.7 explain, "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client." *Id.* at Rule 1.7, Comment 1. "Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests." *Id.* at Rule 1.7, Comment 2. The "critical questions" in evaluating whether loyalty is impaired are "the likelihood that a conflict will eventuate" and "whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* The duty of loyalty "prohibits … simultaneous representation of parties whose interests may conflict, such as co-plaintiffs[.]" *Id.* at Rule 1.7, Comment 7. "[I]mpermissible conflict[s]" include "substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.*

---

[3] In a consolidated trial, the waiver provision in Rule 1.7(b) would be unhelpful because, under Rule 1.7(c), the conflicts that would be at issue would "involve[] circumstances rendering it reasonably unlikely that the lawyer [would] be able to provide adequate representation to one or more of the affected clients."

In a consolidated trial, Plaintiffs' counsel would face Rule 1.3 and 1.7 conflicts because counsel would have to (at least implicitly, if not explicitly) compare the merits of the cases and argue that some cases are stronger than others. For example, to zealously and loyally represent the three Plaintiffs who have *not* received alleged trespass notices, Plaintiffs' counsel would be obligated to emphasize the same—even though it would hurt other Plaintiffs who allegedly have received trespass notices. Here's an example argument:

> Wingate argues that Kenneth Long received a trespass notice. But Marcus Sims did not receive a trespass notice. You cannot consider a trespass notice as to Marcus Sims's status at Bedford Pines.
>
> Even if you find that Kenneth Long received a valid trespass notice, you cannot hold it against Marcus Sims and you should not consider it against Marcus Sims. The inquiry for Marcus Sims is simpler and more straightforward.[4]

While that sort of argument may be loyal and fair to Marcus Sims (a plaintiff without a trespass notice), it would be disloyal and unfair to Plaintiffs (like Kenneth Long) who allegedly received trespass notices. In making such an argument, Plaintiffs' counsel would not "act with commitment and dedication to the interests of [Kenneth Long] and with zeal in advocacy upon [Kenneth Long's] behalf." *Id.* at Rule 1.3, Comment 1. Further, that type of argument would highlight

---

[4] Plaintiffs' counsel provides example arguments throughout to illustrate ethical conflicts that likely would arise in a consolidated trial. Plaintiffs' counsel uses some of the Plaintiffs' names to illustrate the conflicts clearly and simply. Other Plaintiffs' names could be substituted, and the point would be the same.

"incompatibility in positions relating to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question." *Id.* at Rule 1.7, Comment 7.

Here's another foreseeable argument in a consolidated trial that raises ethical problems and prejudices at least some of the Plaintiffs:

> Even if you find that Kenneth Long was a trespasser, Wingate still owed him a duty not to willfully or wantonly injure him, and Wingate breached that duty.

> But remember, as to Marcus Sims, who never received a trespass notice, you do not need to go there. Wingate owed him a duty of ordinary care. Period.

> Wingate's duty to Marcus Sims is simpler. More basic. More fundamental. Ordinary care.

> Even if you find that Wingate did not willfully and wantonly injury Kenneth Long, Wingate still breached its duty of ordinary care to Marcus Sims.

As with the prior example, this argument is borne out of an unacceptable choice for Plaintiffs' counsel: zealously and loyally represent Plaintiffs without trespass notices, *or* zealously and loyally represent Plaintiffs with alleged trespass notices. In a consolidated trial, Plaintiffs' counsel cannot do both. A consolidated trial invites Plaintiffs' counsel to compare the relative strength of the status evidence for the five Plaintiffs, which undercuts the interests of some of the Plaintiffs to advance the interests of others. That style of argument violates Rule 1.3's mandate to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." *Id.* at Rule 1.3, Comment 1. It reflects the very "incompatibility in positions in relation to an opposing party" prohibited by Rule

1.7. In a consolidated trial Plaintiffs' counsel "cannot consider, recommend or carry out an appropriate course of action for the client [*i.e.*, the Plaintiffs who have allegedly received trespass notices] because of the lawyer's other responsibilities or interests [*i.e.*, to the Plaintiffs who have not received notices]." *Id.* at Rule 1.7, Comment 2; *see also State Mut. Life Assur. Co. of Am. v. Peat, Marwick, Mitchell & Co.*, 49 F.R.D. 202, 210 (S.D.N.Y. 1969) ("[N]otwithstanding the existence of common questions of law and fact among separate actions, consolidation is improper if it aligns parties having conflicting and disparate positions.").[5]

These ethical conflicts are not academic issues. Under Rules 1.3 and 1.7, Plaintiffs have the right to be represented zealously by conflict-free counsel with undivided loyalty in a trial focused on their specific cases. In a consolidated trial, those rights would be impaired, and Plaintiffs would be prejudiced.[6]

In addition to the conflict and prejudice issues, a consolidated trial likely would also create confusion on Plaintiffs' statuses. Each Plaintiff came at different times to visit different tenants and arrived in the common area at different times for

---

[5] If the Court orders a consolidated trial, Plaintiffs' counsel may need to withdraw from the representation of Plaintiffs to avoid these and other ethical issues discussed herein. Presumably at least some of the Plaintiffs would need to proceed *pro se* or find new counsel, which would engender delay, inefficiency, and would not resolve the instant ethical issues, unless all Plaintiffs found separate counsel.

[6] Credibility is a trial attorney's most valuable asset. The conflicting arguments that Plaintiffs' counsel would be bound to make in a consolidated trial on Plaintiffs' statuses would severely impair counsel's credibility. The prejudice to Plaintiffs cannot be overstated.

different reasons. In a consolidated trial, the jury would have to keep straight the web of different factual scenarios for each Plaintiff to determine the duty Wingate owed in each particular case. *Compare* O.C.G.A. § 51-3-1 (duty of care to invitees) *with* O.C.G.A. § 51-3-2 (duty of care to licensees) *with* O.C.G.A. § 51-3-3 (duty of care to trespassers). This disparate, case-specific evidence likely would prolong a consolidated trial and delay resolution of the individual cases.

The Court should deny the motion to consolidate because evidence and argument on the duty element likely would cause conflicts, prejudice, and confusion.

      b.    <u>In a Consolidated Trial, Evidence and Argument on the **Breach of Duty Element** Likely Would Cause Confusion, Prejudice, and Conflicts.</u>

Whether Wingate breached its duty depends on the duty that Wingate owed. So, a consolidated trial on the breach of duty element likely would engender ethical conflicts, prejudice, and confusion for the same reasons the duty element would.

      c.    <u>In a Consolidated Trial, Evidence and Argument on the **Causation Element** Likely Would Cause Confusion, Prejudice, and Conflicts.</u>

Throughout the litigation, Wingate has argued that Plaintiffs were targeted on June 30, 2020, and that it is Plaintiffs' fault that they were shot. As the Court has found, there is no evidence to support the claim:

> Wingate points to no evidence that any of the Plaintiffs were aware of the possibility of the shooting that night, or that they or any of the people around them were likely to be targeted. The shooters have never been identified. None of the victims have been charged with a crime for the events of June 30th.

Doc. 120 at 35. After the Court entered its summary judgment order, APD released its investigative file, which confirms that the shooting is unsolved; there have been no arrest warrants issued, no arrests made, no charges filed, and no convictions entered.

Nonetheless, Wingate persists in claiming without evidence that Plaintiffs were targeted. Wingate's experts opine that decedent Marcus Sims must have been "targeted" because he was shot five times. *See, e.g.*, Ex. 2, Groussman Dep. at 84-85 ("Q. So what file materials did you review to form your opinion that it was a targeted shooting? A. What I mentioned to you before, that Mr. Sims was shot five times. That typically more often than not and in my experience when there's a drive-by shooting into a group like that and one specific person is hit as many times as he was, that that was not just a random shooting, it wasn't just to send a message. So that's what I base that on.")[7]; Ex. 3, Vellani, T. Dep. at 80 ("Based on the number of shots that hit Mr. Sims, you know, just based on that physical evidence, it appears that he was the target."). These opinions will be challenged in *Daubert* and *limine* briefs.[8]

---

[7] Later, Mr. Groussman testified he did not know how many times the other victims were shot. Ex. 2 at 65 ("Q. … Do you know how many times the other victims were shot? A. At least once. I don't know -- I don't know how many times per each individual, no.")

[8] While Wingate's experts claim it was a "targeted" shooting, Wingate's counsel suggested Wingate is not arguing the shooting was "targeted." Ex. 1 at 15 ("Judge, I'll just address your question that you asked.  Does it matter if any of these people

If Wingate argues that some Plaintiffs were "targeted" in a consolidated trial, then the co-Plaintiffs would likely split—with one group arguing that Wingate is solely at fault, and another that Wingate and some co-Plaintiffs share the fault. For example, the survivors of Marcus Sims would no doubt argue that Wingate is solely at fault and that Marcus Sims was not targeted (*i.e.*, that he is not to blame). But other Plaintiffs in a consolidated trial may, in effect, argue that both Marcus Sims and Wingate are at fault.  For example:

> You may find that Marcus Sims was targeted and that he was at fault for getting shot. But that has nothing to do with Ricky Phillips. Ricky Phillips was not targeted. He does not know anything about Marcus Sims being targeted. Whatever you conclude about Marcus Sims being targeted, and whether he was at fault for getting shot or not, should play no role in your analysis of Ricky Phillips's independent claim against Wingate.

> The fact that Marcus Sims may have been the target only strengthens Ricky Phillips's claim that Wingate was negligent in failing to secure its property. How? Targeted shootings—shootings of people like Marcus Sims—were regular, predictable events at Bedford Pines, like the evidence shows. Marcus Sims may be responsible for getting shot, but Wingate is responsible for Ricky Phillips getting shot.

> Even though targeted shootings were a regular event at Bedford Pines, Wingate still allowed a restaurant to operate in the primary problem area at Bedford Pines and attract gatherings, Wingate did not monitor Bedford Pines, and Wingate did not have security working at Bedford Pines. That's egregious.

---

were targeted or not for purposes of this motion for summary judgment?  The answer to that is, no, it doesn't … we're not talking about somebody targeting these gentlemen that night.  We're talking about the risk of violent crime… … it doesn't matter if these folks were intended or not because we know that the drive-by shooting happened there in 6 seconds.  And they were just shooting at a group of people.").

In a consolidated trial where Wingate argues that some Plaintiffs were "targeted," Plaintiffs' counsel would be forced to take positions that help some clients and harm others to advocate zealously and loyally for Plaintiffs who are not purported targets of the shooting. These comparative arguments—highlighting the strengths of some cases while emphasizing the weaknesses of others—violate counsel's duty to represent all Plaintiffs zealously and loyally. *See* Ga. Rules of Prof'l Conduct 1.3 and 1.7. If Plaintiffs' counsel is talking out of both sides of their mouth in a consolidated trial, their credibility would be undermined, and Plaintiffs would be prejudiced irreparably.

In a binding Fifth Circuit opinion, the Court addressed ethical conflicts arising from finger pointing amongst co-plaintiffs represented by the same lawyer in a consolidated trial. *Dupont v. S. Pac. Co.*, 366 F.2d 193, 196–97 (5th Cir. 1966). *Dupont* involved a single trial about a vehicle collision with a railroad. The co-plaintiffs in the case included *both* the survivors of passengers in the subject vehicle *and* the survivor of the driver of the same vehicle. On appeal, the Fifth Circuit reversed and remanded the case after a consolidated trial because conflicts among the plaintiffs' positions created an ethical conflict for co-plaintiffs' counsel. At the consolidated trial, the survivors of the passengers claimed that the collision resulted from the concurrent negligence of the railroad and the driver, while the survivor of the driver claimed it resulted from the negligence of the railroad only. Even though

17

the driver's survivor was not a defendant, and was a co-plaintiff with the passengers'
survivors, there was an ethical problem for co-plaintiffs' counsel: *contesting* the
concurrent negligence of the driver (for the driver) and *proving* the concurrent
negligence of the driver (for the passengers). This unacceptable ethical choice was
rooted in incompatible positions among co-plaintiffs, which is the ethical issue that
a consolidated trial would present here.[9] *See, e.g., Capstraw v. New York Cent. R.
Co.*, 15 F.R.D. 267, 268 (N.D.N.Y. 1954) (denying consolidation where "joinder
might set plaintiff against plaintiff"); *Young v. City of Augusta, Ga. Through
DeVaney*, 59 F.3d 1160, 1169 (11th Cir. 1995) ("Decisions to consolidate have been
reversed in cases where a party was prejudiced because his substantive legal interests
conflicted with those of a co-party.")

    d.    <u>In a Consolidated Trial, Evidence and Argument on the **Damages
Element** Likely Would Cause Delay and Confusion.</u>

As discussed, Plaintiffs' damages are dramatically different, and the evidence
and witnesses necessary to prove damages in each case are unique. A consolidated

---

[9] As stated, some Plaintiffs may point the finger at Marcus Sims and Wingate, while
Marcus Sims points the finger at Wingate. Likewise, in a consolidated trial
Plaintiffs' counsel may argue that Wingate breached the duty of ordinary care as to
some Plaintiffs and the duty to avoid willful and wanton injury as to others, but that
proving a violation of the duty of ordinary care is easier because it's a lower
standard. This sort of comparison is not just a problem for counsel's credibility with
the jury, it is an ethical issue and prejudicial to Plaintiffs.

trial on damages likely would delay the resolution of the individual cases and burden the jurors with a mire of different evidence unique to each Plaintiff.

e.     In a Consolidated Trial, Evidence and Argument on **Assumption of Risk and Plaintiffs' Knowledge** Likely Would Cause Confusion, Prejudice, and Conflicts.

Like Wingate's counsel told the Court, Plaintiffs "do not have all the same knowledge" of Bedford Pines (Ex. 1 at 6), and "individual facts" inform the superior knowledge analysis "for each one" of the cases, (Ex. 1 at 11, 5 ("Obviously, we have five cases. There's some issues that overlap. There's some issues that are, you know, personal knowledge and certain issues that are by defendant, so one—excuse me— by plaintiff."))

In a consolidated trial, the jury would receive evidence about each Plaintiffs' unique background and history at Bedford Pines through different witnesses and documentary evidence. That, on its own, would delay resolution of the individual cases and cause juror confusion in a consolidated trial.

There are prejudice concerns, too. In a consolidated trial, Plaintiffs' counsel would be forced to make comparative arguments that distinguish the relative knowledge of the respective Plaintiffs. For example:

> Keiontay Davis had limited knowledge about Bedford Pines. He never lived there. Wingate's knowledge was superior to Keiontay's. You should find that and move on.

What about Kenneth Long? It's true that Kenneth Long was at Bedford Pines more often, and that he therefore had more knowledge about Bedford Pines. His knowledge was still less than Wingate's.

But even if you disagree, that shouldn't affect your analysis of Keiontay's knowledge. Your review of Keiontay should be separate and distinct, because Kenneth's knowledge has nothing to do with Keiontay's knowledge.

As discussed, comparisons advance some cases and handicap others.[10] Plaintiffs' counsel cannot zealously and loyally advocate for all Plaintiffs where the facts about Plaintiffs' knowledge are inconsistent and incompatible.

Lastly, Wingate intends to introduce criminal history evidence for the three Plaintiffs with criminal history (Kenneth Long, Ricky Phillips, Demario Newton) to argue they had equal or superior knowledge of the risk of getting shot at Bedford Pines. *See, e.g.,* Doc. 120 at 9, n.13. If any such evidence is admitted in a consolidated trial, it likely would cause prejudicial spill-over to the Plaintiffs with no criminal history as of June 30th (Marcus Sims, Keiontay Davis). *See, e.g., Capstraw*, 15 F.R.D. 267 (denying motion to consolidate trial where evidence admissible in one plaintiff's trial but not the other).

f.   <u>The Specific Risks of Ethical Conflicts, Prejudice, and Confusion Outweigh Considerations of Inconsistent Adjudications, Efficiency, and Economy.</u>

The ethical conflicts, prejudice, and confusion that would likely arise in a consolidated trial override the remaining considerations of inconsistent

---

[10] Other names could be substituted and the issue remains.

adjudications, the burden posed by multiple lawsuits, the length of time required to conclude multiple suits as opposed to one, and the relative expense of multiple trials. *Eghnayem*, 873 F.3d at 1313 (listing considerations to balance).

The risk of "inconsistent adjudications of common factual and legal issues" is slight. *Id.* As discussed, there are substantial factual and legal differences across the cases that outweigh the commonalities. In practice, multiple adjudications are improbable; a verdict in one case and the Court's evidentiary rulings likely would weigh heavily on negotiations in the others. The parties have differing views of Wingate's liability, and a verdict likely would help resolve many of those disagreements. In its summary judgment order, the Court mentioned in a footnote a defense verdict in a drive-by shooting case in DeKalb County. Doc. 120 at 30, n.31. Plaintiffs highlighted that case in their summary judgment briefing for the Court. Doc. 102 at 22, n.6. The facts of that case diverge significantly from this case:

| **Key Facts** | **This Case**[11] | **Prior Case** |
|---|---|---|
| Prior shootings at property? | Many | Zero |
| Security at property at time of incident? | No | Yes |
| Restaurant on property attracting people to common area to eat and socialize? | Yes | No |

---

[11] The facts of this case are outlined in the summary judgment briefing and the Court's corresponding order. The facts of the prior DeKalb County case are set out in Ex. 4, which was the Defendants' Statement of Undisputed Material Facts for Which There is No Genuine Issue To Be Tried.

| Key Facts | This Case | Prior Case |
|---|---|---|
| Events prior to shooting? | Peaceful gathering of group to eat and socialize at restaurant on property | Fight and warning shots |
| Victims shot on Defendant's property? | Yes | Unknown |
| Legal standard? | "Reasonable foreseeability" under *CVS* | "Heightened foreseeability" under *Hillcrest Foods* |
| Knowledge of risk of incident? | No evidence victims anticipated 6/30 shooting | Victim witnessed fight and observed warning shots but did not leave |

Wingate may disagree with Plaintiffs' summary, but the point stands: one trial will help resolve differences of opinion about Wingate's liability. For these reasons, "inconsistent adjudications" of common issues is a low risk.

The burden posed by multiple lawsuits is likewise low. *Id.* To date, the parties have conducted consolidated discovery to avoid redundancy and inefficiency. Plaintiffs do not oppose consolidating the cases for certain pretrial proceedings (e.g., consolidated *Daubert* briefing; consolidated *in limine* briefing; consolidated pretrial conference). The parties have taken—and will continue taking—reasonable measures to economize and reduce burden through consolidation in discovery and in certain pretrial proceedings. But consolidating cases for trial raises different concerns that do not arise in a consolidation for discovery or pretrial proceedings.[12]

---

[12] Wingate says that the parties have effectively consolidated discovery in the five cases. True. But discovery consolidation is fundamentally different from trial consolidation. It does not create the conflicts, prejudice, and confusion discussed.

As to "length of time to conclude multiple suits as against one," *id.*, it would likely take Plaintiffs *at least* two to three times as long to try a consolidated case as it would to try one case (*i.e.*, ~three days versus ~six to nine days).[13] In a consolidated trial, each Plaintiff would call their own status witnesses, knowledge witnesses, and damage witnesses. Further, as explained, the likelihood of multiple verdicts is low. A single verdict will probably lead to resolution of the other cases. Thus, consolidation would likely ***add*** trial time, costs, and complexity.

Finally, the "relative expense" of a single trial versus multiple trials also does not favor a consolidated trial. *Id.* A consolidated trial is likely to be two to three times as long as a trial in one case. And a verdict in one is likely to assist the parties in resolving the others. The chances of having five separate trials is exceedingly low. Not all witnesses who were deposed will be trial witnesses, and virtually all depositions were video recorded. The parties will have the option of using those recordings in lieu of live testimony to reduce cost and burden. Plaintiffs will certainly do so. The "relative expense" of a consolidated trial would likely be more.

Regardless of whether the Court finds that convenience and economy considerations favor a consolidated trial, the overriding concern remains a fair and impartial trial for all parties. *See, e.g., Johnson*, 899 F.2d at 1285 ("Considerations of convenience and economy must yield to a paramount concern for a fair and

---

[13] Presumably, in a consolidated trial Wingate's case-in-chief would be longer, too.

impartial trial."); *Arnold*, 712 F.2d at 906 ("A trial must remain fair to both parties, and such considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice.").

Because of the grave risks of conflict, prejudice, and confusion in a consolidated trial, any marginal convenience and efficiency gains from a consolidated trial are not enough to justify it. Wingate has not carried its burden to show consolidation is warranted.[14]

## II. If the Court Opts to Consolidate the Cases for Trial Over Plaintiffs' Objections, then it Should Break the Cases in Two Groups.

If the Court consolidates the cases for trial over Plaintiffs' objections, it should not schedule a single consolidated trial for all five cases because of the risks of conflicts, prejudice, and confusion. Instead, it should break the Plaintiffs into the following groups: **Group 1 (alleged non-trespassers):** Marcus Sims, Keiontay Davis, Ricky Phillips; **Group 2 (alleged trespassers):** Kenneth Long, Demario Newton. This division mitigates *some* of the conflict, prejudice, and confusion concerns. By separating Plaintiffs based on alleged statuses, the risks arising from counsel comparing the evidence on Plaintiffs' statuses (and the legal import of those distinctions) would be reduced. The concern would, however, not be eliminated

---

[14] Wingate does not cite to any order consolidating cases for trial involving negligence claims under Georgia law relating to a third-party criminal act. As stated, such matters raise case-specific fact issues as to a plaintiff' status (duty and breach of duty), causation (e.g., targeted or not), knowledge, and damages.

because there is differing evidence on status as to each Plaintiff in the sub-groups. Therefore, a trial with Plaintiffs grouped based on alleged status would mitigate some of the more severe conflict, prejudice, and confusion risks, but would not eliminate them. Even so, the grouping proposed would not address the issues identified about causation (*i.e.*, targeting), damages, and Plaintiffs' knowledge, so Plaintiffs remain opposed to a consolidated trial.

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny Wingate's motion to consolidate. If the Court opts for consolidation over Plaintiffs' objections, then Plaintiffs request that the Court divide the Plaintiffs into two groups based on their alleged statuses on the property (alleged non-trespassers and alleged trespassers) and schedule two consolidated trials, one for each group.

Dated: This 16th day of December, 2025.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
Georgia State Bar No. 712859
Oto U. Ekpo
Georgia State Bar No. 327088
*Attorneys for Plaintiff*

Finch McCranie, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
404-658-9070; Fax 404-688-0649
david@finchmccranie.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
Georgia Bar No. 712859
*Counsel for Plaintiff*

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile
david@finchmccranie.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing filing into the District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Respectfully submitted this 16th day of December, 2025.

<u>/s/ David H. Bouchard</u>
David H. Bouchard
Georgia Bar No. 712859
*Counsel for Plaintiff*

FINCH McCRANIE, LLP
229 Peachtree Street NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070
(404) 688-0649 (fax)
david@finchmccranie.com