# Exhibit 4

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

VIERGINA ALEXIS; PIERRE PIERRE; and     :
NATALIE GABRIEL, as administrator of     :
the estate of KEVIN PIERRE, deceased     :
        :    CIVIL FILE ACTION
      *Plaintiffs*,      :
        :    NO.: 14A52296E5
vs.                   :
        :
RIVERSTONE RESIDENTIAL SE, LLC; IMPACT :
BRADFORD, LP; PROGRESSIVE IMPACT    :
BRADFORD, LLC; AFFORDABLE HOUSING   :
SOLUTIONS, INC. (MD); ENTERPRISE     :
COMMUNITY ASSET MANAGEMENT, INC.;   :
SIGNAL 88 FRANCHISE GROUP, INC.;     :
SIGNAL 88 SECURITY OF ATLANTA, LLC;   :
AND JOHN DOES NOS. 4-5,         :
        :
      *Defendants*.      :

## DEFENDANTS RIVERSTONE RESIDENTIAL SE, LLC, IMPACT BRADFORD, LP, PROGRESSIVE IMPACT BRADFORD, LLC, AFFORDABLE HOUSING SOLUTIONS, INC. (MD), AND ENTERPRISE COMMUNITY ASSET MANAGEMENT, INC.'S STATEMENT OF PLAINTIFFS' THEORIES OF RECOVERY AND STATEMENT OF UNDISPUTED MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Defendants Riverstone Residential SE, LLC, Impact Bradford, LP, Progressive Impact Bradford, LLC, Affordable Housing Solutions, Inc. (MD) and Enterprise Community Asset Management, Inc. (hereinafter, the "Bradford Gwinnett Defendants"), pursuant to Uniform Superior Court Rule 6.5, file this, their Statement of Plaintiffs' Theories of Recovery and Statement of Undisputed Material Facts For Which There Is No Genuine Issue To Be Tried, in support of and contemporaneously with their Motion for Summary Judgment, showing this Honorable Court as follows:

STATE COURT OF
DEKALB COUNTY, GA.
1/29/2016 11:50:01 AM
E-FILED
BY: Monique Roberts

## STATEMENT OF PLAINTIFFS' THEORIES OF RECOVERY

This premises liability lawsuit arises out of a shooting which occurred on a public street that is neither owned nor managed by the Bradford Gwinnett Defendants. Plaintiffs assert claims against the Bradford Gwinnett Defendants for negligence, attorney's fees and punitive damages. The evidence in this case demonstrates that there is no genuine issue of material fact with respect to Plaintiffs' claims against the Bradford Gwinnett Defendants. As such, Plaintiffs' claims each fail as a matter of law, and the Bradford Gwinnett Defendants are entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

**A.    General Background.**

### 1.

The Bradford Gwinnett Townhomes ("BGT") consist of thirty-one (31) individual townhomes located along Beaver Springs Lane in Gwinnett County, Norcross, Georgia. (Limited Warranty Deed; Aerial view of Beaver Springs Lane).

### 2.

In September 2011, Defendant Riverstone Residential SE, LLC ("Riverstone") began managing BGT. (Affordable Housing Solutions, Inc. (MD)'s Responses to Plaintiffs' Interrogatories, Set-1, ¶ 1).

### 3.

Defendant Affordable Housing Solutions, Inc. (MD) ("AHS") took ownership of BGT on or about December 7, 2012. (Limited Warranty Deed).

### 4.

On or about June 7, 2013, Ms. Alexis and Pierre signed a Lease Agreement to reside at unit 1998-C of BGT. (Lease Agreement).

5.

Paragraph 24 of the Lease provides in pertinent part:  "Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes."  (Lease Agreement).

**B.     Background Regarding the Location of the Incident - Beaver Springs Lane.**

6.

Beaver Springs Lane is a public street that is owned and maintained by Gwinnett County. (Deposition of Corporal D.M. Washington ("Corp. Washington. Dep."), p. 51/10-14; Deposition of Paul Kastes ("Kastes Dep."), pp. 27/13-16, 84/2-8; Deposition of Teresa Stancil ("Stancil Dep."), pp. 110/22-111/10, 112/8-12; Deposition of Amanda Kitts ("Kitts Dep."), pp. 51/7-20, 172/10-173/4; Gwinnett County Department of Transportation documents).

7.

The Bradford Gwinnett Defendants did not own, manage, or maintain Beaver Springs Lane.  (Corp. Washington. Dep., p. 51/10-14; Kastes Dep., pp. 27/13-16, 84/2-8; Stancil Dep, pp. 110/22-111/10, 112/8-12; Kitts Dep., pp. 51/7-20, 172/10-173/4).

8.

Rather, some of the Bradford Gwinnett Defendants individually owned and managed the majority, **but not all**, of the townhomes located along Beaver Springs Lane.  (Stancil Dep., pp. 277/5-278/22; Kitts Dep., p. 173/5-16).

9.

Impact Bradford and Progressive Impact Bradford did not own or manage any of the townhomes located along Beaver Springs Lane.  (Deposition of Tom Merkel, pp. 14/11-15/1,

15/10-16, 63/10-22; Impact Bradford's Responses to Plaintiffs' Interrogatories, Set-1, ¶¶ 5-12, 14, 20-26, 28, 31-34; Progressive Impact Bradford's Responses to Plaintiffs' Interrogatories, Set-1, ¶¶ 5-12, 14, 20-26, 28, 31-34).

10.

Members of the public owned and/or resided in the other townhomes, and thus these townhomes were not controlled or maintained by the Bradford Gwinnett Defendants. (Stancil Dep., pp. 277/5-278/22; Kitts Dep., p. 173/5-16).

11.

Because Beaver Springs Lane is a public street, the Bradford Gwinnett Defendants had no jurisdiction to regulate conduct on Beaver Springs Lane nor could they restrict members of the public from accessing it either in a vehicle or on foot. (Kastes Dep., pp. 79/9-80/1, 154/15-25; Stancil Dep., pp. 289/23-290/3; Kitts Dep., pp. 172/25-173/4).

12.

Defendant Riverstone, the property management company for BGT, retained Signal 88 Security of Atlanta, LLC ("Signal 88"), a private security company, to perform four nightly random patrols of the BGT townhomes. (Signal 88 Security Contract).

13.

As part of these patrols, Signal 88 would drive on Beaver Springs Lane. (Security Contract).

14.

However, Signal 88 also had no jurisdiction to regulate conduct on, or to control access to, Beaver Springs Lane. (Deposition of Rick Dunn, pp. 116/10-19, 116/25-117/6; Deposition of

-4-

Mark McClure, pp. 143/16-145/2; Kastes Dep., pp. 82/18-83/6, 155/1-11; Deposition of John

Villines ("Villines Dep."), pp. 47/17-48/4).

**C.    The Subject Incident**

15.

Around 11:15 p.m. on April 13, 2014, a group of five or six men in a pickup truck drove

down Beaver Springs Lane and parked in the street.  (Corp. Washington Dep., pp. 20/1-5, 48/1-

49/3, 96/1-17).

16.

No one riding in the pickup truck resided at BGT or in the other townhomes located

along Beaver Springs Lane.  (Corp. Washington Dep., pp. 50/20-51/4, 67/3-9).

17.

While the men were parked in the street, they began conversing with Dave Champe

("Champe"), a pedestrian who was standing on Beaver Springs Lane.  (Corp. Washington Dep.,

pp. 20/1-5, 51/20-52/8; Deposition of Janiece Washington ("J. Washington Dep."), pp. 11/18-

12/1).

18.

Though Champe did not reside at BGT or the other townhomes located along Beaver

Springs Lane, he sometimes stayed with Ms. Alexis and Pierre, though he was not on their Lease

Agreement.  (Corp. Washington Dep., p. 67/3-9; J. Washington Dep., pp. 45/22-45/6; Lease

Agreement).

19.

 In fact, Champe was at Pierre and Ms. Alexis' townhome only hours before the

shooting.  (Deposition of Viergina Alexis, pp. 77/18-80/8).

20.

While the men in the truck and Champe were conversing in the street, Champe's girlfriend Janiece Washington ("Washington"), another nonresident, arrived on Beaver Springs Lane in her vehicle and joined the conversation. (Corp. Washington Dep., pp. 41/3-9, 42/15-25; J. Washington Dep., pp. 45/22-24, 51/25-52/19).

21.

At this time, Pierre was talking to persons in front of a townhome located along the street. (J. Washington Dep., pp. 14/6-12, 58/4-22).

22.

Shortly after Washington arrived, words were exchanged between Washington and Quinton Hall ("Hall"), the driver of the pickup truck. (Corp. Washington. Dep., pp. 20/15-20, 50/2-11; J. Washington Dep., pp. 56/17-57/2).

23.

After this verbal altercation, the group of men exited the truck and a fight broke out in the street. (Corp. Washington Dep., pp. 20/15-22, 51/5-9, 67/3-17).

24.

During the fight, one of the men who had exited the pickup truck fired "warning shots" from Beaver Springs Lane either into the street or the air. (Corp. Washington Dep., pp. 55/9-56/3, J. Washington Dep., pp. 69/12-70/6).

25.

Based on Corporal ("Corp.") D.M. Washington's investigation, Pierre saw the fight and was reportedly in the street at some point during the fight. (Corp. Washington Dep., pp. 14/4-12, 54/4-10, 55/1-8).

26.

Washington testified that she never saw Pierre in the street, though she admitted that she did not know his location after she initially saw him upon arriving on Beaver Springs Lane. (J. Washington Dep., pp. 63/3-64/15, 71/8-14).

27.

When the fight was ending, the group of men retreated to the pickup truck and Hall, the driver, circled the cul-de-sac at the end of Beaver Springs Lane. (Corp. Washington Dep., pp. 21/1-4, 59/2-10, 59/22-60/2; J. Washington Dep., pp. 66/14-16, 70/25-71/2).

28.

As the truck was driving on Beaver Springs Lane leaving the area of the fight, Sherwin Johnson ("Johnson"), who was seated in the front passenger seat, fired several shots out of the truck's passenger side window. (Corp. Washington Dep., pp. 21/1-7, 22/19-25, 24/3-9, 60/24-61/6, 67/18-21, 99/19-21; J. Washington Dep., p. 71/15- 24).

29.

One of the shots fired by Johnson out of the pickup truck struck Pierre in the neck and he later died as a result. (Corp. Washington Dep., p. 62/2-12).

30.

It is unclear where Pierre was located when he was shot. (Corp. Washington Dep., p. 111/2-6).

31.

However, there is no dispute that the shot that killed Pierre was fired from a pickup truck that was driving on Beaver Springs Lane. (Corp. Washington Dep., pp. 21/1-7, 22/19-25, 24/3-9,

60/24-61/6, 62/2-12, 67/18-21, 99/19-21; Kastes Dep., pp. 74/3-11, 154/15-20; Villines Dep., p. 41/5-15).

32.

There was nothing illegal about Hall or Johnson operating their vehicles on Beaver Springs Lane – a public street. (Corp. Washington Dep., pp. 51/20-52/8; Kastes Dep., pp. 71/21-73/5; Villines Dep., pp. 37/20-39/4).

33.

Secondly, throughout the entire incident – from beginning to end – no one committed any crime anywhere other than on a public street. (Corp. Washington Dep., p. 67/22-25).

This 29th day of January, 2016.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

/s/ Mark R. Johnson
Mark R. Johnson
Georgia Bar No. 395042
Jackson A. Dial
Georgia Bar No. 155955
Attorneys for Riverstone Residential SE, LLC,
Impact Bradford, LP, Progressive Impact Bradford,
LLC, Affordable Housing Solutions, Inc. (MD), and
Enterprise Community Asset Management, Inc.

3344 Peachtree Road NE, Suite 2400
Atlanta, Georgia  30326
(404) 876-2700
(404) 875-9433 [fax]
mjohnson@wwhgd.com
jdial@wwhgd.com

STATE COURT OF
DEKALB COUNTY, GA.
1/29/2016 11:50:01 AM
E-FILED
BY: Monique Roberts

-8-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day filed the foregoing pleading via the Odyssey

File & Serve system which will send notification to the following individuals:

Matthew B. Stoddard, Esq.
The Stoddard Firm
5447 Roswell Road, Suite 204
Atlanta, Georgia  30342
*Attorney for Plaintiffs*

Broderick W. Harrell, Esq.
Carlock, Copeland & Stair, LLP
191 Peachtree Street, Suite 3600
Atlanta, Georgia  30303
*Attorney for Defendant Signal 88 Security of Atlanta, LLC and*
*Signal 88 Franchise Group, Inc.*

This 29th day January, 2016.


By:    */s/ Mark R. Johnson*
Mark R. Johnson
Georgia Bar No. 395042